Good morning, your honors. My name is John V. Johnson. I'm here representing the appellant, Mr. David Wilkes. The administrative law judge in this case, under the Chavez decision, found that the plaintiff failed to meet his burden to show a change of circumstances from the previous administrative law judge's decision in 1998 that Mr. Wilkes' orthopedic problems limited him to sedentary work, but he was able to do sedentary work. That Chavez rationale was made by a state agency non-examining physician at the reconsideration level. This is Dr. Bianchi. Dr. Bianchi made a chronological evaluation of the medical evidence, and he noted that the laboratory test results in 1998 showed non-reactive hepatitis C. The district court in footnote number five said that that error was troubling, but dismissed it on the grounds that Dr. Bianchi had also noted that there was elevated ALT and liver enzyme levels here, and that the ultrasound of the abdomen showed that he had an unremarkable liver. Appellant contends that that evidentiary error is prejudicial and which was not overcome by the other evidence of record and was prejudicial, in fact, because the administrative law judge found that Mr. Wilkes' hepatitis C was stable and benign, whereas subsequent liver biopsy tests showed that he had cell necrosis, fibrosis, and inflammation, and every hepatitis C PCR test, RNA PCR test in 1998, 2000, and 2001, showed that his viral load exceeded the maximum that could be recorded here. However, this court held recently in the Obrey decision that even if there is prejudice, that more is required, that substantial rights must be affected here, that that evidentiary error must be more than cumulative and must not be tangential. Appellant contends in this case here that his substantial rights come under the regulations to have the medical evidence thoroughly evaluated. Specifically, 20 CFR 416.929A says when evaluating intensity and persistence of symptoms that all the evidence should be considered here. Is it not apparent that the ALJ did believe that he had hepatitis and that, in other words, was he really relying on Dr. Bianchi's negative findings? The administrative law judge said that he relied upon the examining and non-examining physicians' reports. Yes, Your Honor, the administrative law judge found that Mr. Wilkes had hepatitis C. He just didn't think it was really significant. So ---- Well, it may be significant. I mean, it may be a significant condition. But some of us walk around with all kinds of significant conditions that don't impair our ability to do, what was it, sedentary work? Sedentary work, Your Honor. Yes, that is true. In fact, there's ---- I mean, we have lost limbs and all kinds of things. The ALJ went on to discredit Mr. Wilkes' allegations that he had severe chronic fatigue on the grounds that he didn't apparently tell his physician, Dr. Milosevic, about his chronic fatigue here. The ALJ actually discussed the results of the liver biopsy here. But the ALJ disregarded all of the hepatitis C RNA PCR tests. It's interesting that Dr. Bianchi himself, though, made a ---- the only physician who actually made a specific credibility finding said that Mr. Wilkes was generally credible in his allegations here. But it is at may here that the credibility finding is significant because the judge went on and made a residual functional capacity assessment determination that Mr. Wilkes had the capacity to perform sedentary work, and he did not consider or factor in the chronic fatigue. The district court said that the administrative law judge was justified in not considering chronic fatigue in his functional capacity assessment form because the administrative law judge had, after all, rejected it, discredited the chronic fatigue, and the administrative law judge relied upon the other physicians. As I noted in my brief here, the other examining physicians, Dr. Otani, Dr. Pham, Dr. Balomel, and Dr. Clark, none of them evaluated the results of the liver biopsy or any of the hepatitis C RNA PCR tests. Now, appellant agrees with the district court here that just because a person has hepatitis C does not necessarily mean that there's been a change of circumstances. But this court has held repeatedly under the Smolin and the Reddick decision here that administrative law judge in determining residual functional capacity has a duty to consider the combination of all of a person's impairments and symptoms including chronic fatigue. And all of those physicians, except for Dr. Bianchi, none of them considered the combination of chronic fatigue together with his orthopedic problems here. And as to Dr. Bianchi, this court has held in a luster case that a non-examining physician's opinion alone cannot be the basis for a finding of no disability. The administrative law judge went on to reject Dr. Milosevic's opinion that Mr. Wilkes, his hepatitis C, caused him to become tired, easily tired, and need to take naps on the grounds, again, that he failed to apparently tell his physician he has chronic fatigue, at least it's not in the treatment records here. When did he contract the hepatitis C? The earliest recordation of this would be in 1998 when he was in the Department of Corrections, Your Honor. He complained that he had chronic fatigue. I might add that that was ignored by the administrative law judge here, but apparently that was when it was and that was when the first PCR test was done here and the lab test of the blood test. Was it at the time of the original, the 1998 ALJ decision? I do not know about that, Your Honor. At least the previous administrative law judge did not cite any factual evidence of hepatitis C and did not make any finding that he had hepatitis C, so I don't think so, but it's such a long-term disease process that it could very well have been here. Well, appellant contends that there's no real conflict in the evidence between Dr. Milosevic's opinion and the other physicians because they're based on a different set of facts. None of the physicians considered all the lab tests. What the administrative law judge ignored is it was Dr. Milosevic that sent Mr. Wilkes out to see Dr. Pierce. That's the reason why the liver biopsy was obtained. It was Dr. Milosevic that obtained the hepatitis C RNA PCR test. He had a different set of facts to base his opinion on here, but even if Dr. Milosevic's opinion should have been rejected here, this still leaves a fundamental ambiguity in the case. No physician has ever offered an opinion as to the combination of his chronic fatigue together with his hepatitis C and how it affects his ability to perform sedentary work. And without that information here, we contend that the administrative law judge should have either recontacted the physician to get a clarification or he should have sent Mr. Wilkes out to get another CE exam here, another consultative examination to make that evaluation of all of the medical evidence, all the laboratory tests, and determine the combination of his hepatitis C chronic fatigue together with his orthopedic problems. You represent Mr. Wilkes at this hearing? Yes, Your Honor, I did. And you think it's the administrative law judge's job to go out and make arrangements to have all of these things produced to some other doctor and say, what do you think about this? Or do you think it might be your job to do that? He did do that, Your Honor. After the hearing, he scheduled Mr. Wilkes to undergo the examination by Dr. Clark and Dr. Belomo. The administrative law judge rejected Dr. Belomo's report here, and Dr. Clark was a cardiologist and neither of them really commented on the hepatitis C. Those reports are really unreliable. The administrative law judge should have seen that, that they didn't discuss any of the laboratory test results, didn't offer any opinion about the combination, and the judge should have either recontacted them or sent them out for another CE exam here. And without that, we contend that there was an insufficient factual basis for the judge to rely solely upon the medical vocational guidelines to deny his case here, that this case should be remitted back for further development. I think we understand your question. Thank you. Good morning, Your Honors. Eric Chin for the Commissioner of Social Security. Your Honor, the crux of the claimant's case comes down to the three blood panels that he's talked about. The Commissioner acknowledges the blood tests for what they are. The blood test established that there is a hepatitis C virus in his bloodstream. There's been no dispute that the claimant has an impairment, a hepatitis C impairment. In fact, the ALJ found that he has a severe impairment. What the blood test can't show is that there are any functional limitations coming from that impairment. That is, there's no medical evidence that says if he – if his viral load reaches a certain level, that he, therefore, can't lift more than 20 pounds, he can't stand more than 2 hours in a day, he can't sit more than 6 hours in a day. The blood tests by themselves are insufficient to satisfy the claimant's burden as to functional limitations. Is sufficient to support his testimony about fatigue? Your Honor, in order to – no, they aren't, Your Honor. The case law, the Cotton test, is a two-pronged test. The first prong is that there must – there should be objective evidence establishing some condition that could reasonably explain the claimant's symptoms or allegation of symptoms. That's satisfied here. The hepatitis C blood test established that the impairment's there. But the second prong requires that to the extent that the allegation of symptoms limit a claimant's functional abilities, that those statements still have to be assessed according to all the evidence in the record. The ALJ did that. In arriving at the sedentary – at the sedentary RFC finding, he states, I base my decision on all the evidence in the record. He may have adopted or used the reviewing physician's RFC assessment statement, that is, to sedentary work. But very clearly in that paragraph in his decision, he says, my findings are based on the entire evidence in the record. As far as the credibility of the fatigue allegations, Your Honor, you have – this is what the ALJ saw. You have, on the one hand, the claimant saying, I am so fatigued. I need naps every day. I am in such pain. All I can do is I'm relegated to sitting in a recliner chair all day long. I can't perform any duties. On the other hand, what he sees is a 42-year-old man who, in front of every single doctor, every single doctor describes him as being incredibly well muscled. His muscle development is unusual in this case. They also – it is so unusual that it prompts Dr. Fahm to ask him, are you working out, are you lifting weights? And he responds no, and he denies having lifted any weights for years. So you have a person who is so well muscular, he shows no signs of atrophy. In fact, he's got muscle tone. He used to lift weights? I'm sorry, Your Honor? Did he say he used to lift weights? The claimant? Yes. No, the claimant denied lifting weights. No. You said he hadn't lifted any weights for years. I just wondered. I was just curious whether in the past he had lifted weights. Thank you. I don't know in terms of whether he did lift weights in the past. Dr. Fahm. I just wondered what he indicated in his testimony. Sure. Your Honor, so the picture is you've got a well-muscled individual. He's got – he also was observed to give poor effort in his examination. Dr. Belomo stated he gives poor effort in his strength and range of motion. Dr. Clark, the other examining physician, noted that he refused to participate in any sitting examination. You also have the ALJ saying not only a well-muscled man who gives poor effort, there's a lack of objective findings. If his hepatitis C is so impairing, you'd expect to find other objective findings, like ascetias or edema, that is an accumulation of fluid in his extremities or his abdomen, jaundice, weight loss. None of that's present. In fact, the other objective findings are pretty minimal. There's no neurological deficit. The CT scans are normal. Physical exams basically are normal. There is some limitation in range of motion, which is accounted for. Your Honor, most telling is on the credibility of the fatigue, is that the claimant basically didn't tell anybody. He never complained that he was fatigued or he needed naps. The only evidence in the record is to two examining physicians, and that's to Dr. Clark and Dr. Belomo. To them, he said, yes, my chief complaint is the pain in my back. I also get fatigued. They accounted for that in their RFC finding of sedentary work. They said, okay, he says that he has fatigue. He can still do sedentary work. They imposed no limitation as far as that goes, as far as that allegation. As far as his treating physician, he never raised it. Dr. Milosevic treated him for over a year, that is from the summer of 98, summer of 99, excuse me, until 2000, October 2000, when he issued his opinion. In August 2000, he notes, you know, there's a history of hepatitis C here, but I don't know what the current status is. So he sends him out for a blood test. He sees the claimant two more times before he issues his opinion. In those two visits, the claimant never complains about any fatigue or any complication arising from his hepatitis C, never in the entire time that Dr. Milosevic treated him. Dr. Milosevic issues an opinion, and that opinion is not, is not that he's relegated or he's limited to certain limitations in performing work. It's that he has some non-exertional limitations. That is, he's fatigued, he naps, he has some pain. The ALJ rejected those. So, Your Honor, while the claimant here is saying, I am so fatigued, I can't do anything more except lift a chair, he's well-muscled, there are no objective findings, he's inconsistent. I think we understand. Thank you, Your Honor. Are there any questions? No. Thank you. Thank you. May I do three more points on, very quickly, just to correct the allegation of the record. The ALJ on the first, because you asked, Your Honor. The ALJ on the first hearing was aware of the hepatitis C. It's on page, it's on page 23, I believe. Thank you. Thank you, Your Honor. Well, the first Mr. Law Judge really only made a finding with regards to orthopedic problems, said that Mr. Wilkes had the capacity to perform sedentary work. He made no finding as to the hepatitis C. Mr. Wilkes, again, contends that, agrees that laboratory tests in the cells are not sufficient to establish a change of circumstances here. But we're just arguing that the Mr. Law Judge is required to consider all the laboratory tests, and the Mr. Law Judge did not consider any of the PCR tests, RNA-PCR tests. We contend, again, that Mr. Wilkes' rights were violated because none of the doctors, nor the ALJ, considered the PCR test results. But I think what's significant, in my opinion, with regards to the evaluation of the medical evidence by Dr. Palomo and Dr. Clark after the hearing is that Dr. Palomo made a very detailed, extensive evaluation of all of the medical evidence, and yet he never made any mention of the results of the liver biopsy or the hepatitis C RNA-PCR test results. It seems really clear that since none of the physicians, and that's Dr. Bianchi or Otani, Pham, Clark, or Palomo, none of them mentioned any of the laboratory test results here, that those laboratory test results were withheld by the state agency from those physicians. Those physicians did not have the laboratory test results, and because they did not have the laboratory test results, their evaluations are unreliable. All right. Counsel, you have more than used your time. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Canby, Duffy